**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

| | |
|---|---|
| INFRASOURCE SERVICES, LLC,<br><br>                 Appellant,<br><br>        v.<br><br>DEPARTMENT OF LABOR AND<br>INDUSTRIES,<br><br>              Respondent. | DIVISION ONE<br><br>No. 83515-7-I<br><br>UNPUBLISHED OPINION |

DWYER, J. — The Department of Labor and Industries (the Department) appeals from the superior court order vacating a citation issued to InfraSource Services, LLC (InfraSource) for failing to install required cave-in protection in a trench four feet or greater in depth. Because substantial evidence supports the Board of Industrial Insurance Appeal's (the Board's) findings that the unprotected trench was four feet or greater in depth, we reverse the order of the superior court and reinstate the decision of the Board.

I

InfraSource is a company that installs gas piping. In June 2019, an InfraSource plat crew was tasked with installing and connecting gas piping in an existing trench at the housing development located at 5825 83rd Avenue, Marysville, Washington.

On June 6, 2019, Dan Andemariam, a Department Compliance Safety and Health Officer, was conducting site surveillance in Marysville when he "saw a head pop out of a hole." The "hole" was in fact an excavated trench. On that day, the trench did not have in place any trench boxes, fin forms, or other shoring material designed to prevent cave-ins.

Four InfraSource workers were present on site. Three of the workers were standing near the trench and the other was in the trench itself. The InfraSource employee standing in the trench was identified as Benjamin Grubenhoff. Grubenhoff told Andemariam that he was instructed by his foreman, Peter DeGraaf, to enter the trench so as to ensure that a guide wire did not snag or bunch up. At the time Andemariam arrived, Grubenhoff had been in the trench for no more than five minutes.

Andemariam measured the depth of the trench in two locations using his tape measure. He also took photographs of those measurements. Based on his measurements, Andemariam determined that the trench was greater than four feet deep.

Andemariam returned to the worksite a few days later. By that time, InfraSource had installed fin forms along the walls of the trench. These fin forms measured four feet high by eight feet long. Andemariam took photographs of the trench with the shoring plates installed.

The Department issued a citation to InfraSource for three violations of the Washington Industrial Safety and Health Act[1] (WISHA). Specifically, the

---

[1] Ch. 49.17 RCW.

Department alleged that InfraSource had committed a serious repeat violation of WAC 296-155-657(1)(a),[2] a serious repeat violation of WAC 296-155-655(11)(b),[3] and a serious violation of WAC 296-155-655(10)(b).[4]  The total monetary penalty assessed for these violations was $8,000.

InfraSource appealed, contending that it had not committed any violations and, in the alternative, that any violations were the result of unpreventable employee misconduct.  Following a hearing, Industrial Appeals Judge William Andrew Myers issued his proposed decision and order.  Therein, Judge Myers concluded that, "On June 6, 2019, InfraSource committed repeat serious violations of the provisions of WAC 296-155-657(1)(a) and of WAC 296-155-655(11)(b) as alleged."  Conclusion of Law 2.  InfraSource petitioned for review, arguing that the Department failed to prove that the trench was four feet or

---

[2]     (a) You must protect each employee in an excavation from cave-ins by an adequate protective system designed in accordance with subsections (2) or (3) of this section except when:
    (i) Excavations are made entirely in stable rock; or
    (ii) Excavations are less than 4 feet (1.22m) in depth and examination of the ground by a competent person provides no indication of a potential cave-in.
[3] Where the competent person finds evidence of a situation that could result in a possible cave-in, indications of failure of protective systems, hazardous atmospheres, or other hazardous conditions, you must remove exposed employees from the hazardous area until the necessary precautions have been taken to ensure their safety.
[4] You must protect employees from excavated or other materials or equipment that could pose a hazard by falling or rolling into excavations. Protection must be provided by placing and keeping such materials or equipment at least two feet (.61 m) from the edge of excavations, or by the use of retaining devices that are sufficient to prevent materials or equipment from falling or rolling into excavations, or by a combination of both if necessary.
This allegation was dismissed by the Board.  The Department does not challenge that decision.

greater in depth. The Board adopted Judge Myers' findings and conclusions in full as its decision.

InfraSource appealed this decision to the King County Superior Court. The superior court found that key findings of fact and a key conclusion of law were not supported by substantial evidence. The superior court therefore reversed the Board's order and vacated all penalties assessed to InfraSource.

II

The Department contends that the decision of the superior court should be reversed, because, contrary to the superior court's ruling, substantial evidence supports the Board's findings and conclusions that InfraSource employees had access to an unprotected trench greater than four feet in depth. We agree.

We review a decision of the Board based on the record before the agency. Cent. Steel, Inc. v. Dep't of Labor & Indus., 20 Wn. App. 2d 11, 21, 498 P.3d 990 (2021), review denied, 199 Wn.2d 1020 (2022). We "review findings of fact to determine whether they are supported by substantial evidence and, if so, whether the findings support the conclusions of law." J.E. Dunn Nw., Inc. v. Dep't of Labor & Indus., 139 Wn. App. 35, 42-43, 156 P.3d 250 (2007) (citing Inland Foundry Co. v. Dep't of Labor & Indus., 106 Wn. App. 333, 340, 24 P.3d 424 (2001)). Evidence is substantial if it is sufficient to convince a fair-minded person of the truth of the stated premise. Cent. Steel, 20 Wn. App. 2d at 22. We do not reweigh evidence but instead construe the evidence in the light most favorable to the party that prevailed in the administrative proceeding—here, the Department. Cent. Steel, 20 Wn. App. 2d at 22.

The purpose of WISHA is to "assure, insofar as may reasonably be possible, safe and healthful working conditions for every man and woman working in the state of Washington." RCW 49.17.010. The Department of Labor and Industries is charged with the authority to impose citations and penalties against employers for violating WISHA regulations. RCW 49.17.050, .120, .180. At the administrative level, the Department bears the initial burden of proving the existence of the cited violations. WAC 263–12–115(2)(b); SuperValu, Inc. v. Dep't of Labor & Indus., 158 Wn.2d 422, 433, 144 P.3d 1160 (2006).

To establish a violation of a WISHA regulation, the Department must prove that:

> "(1) the cited standard applies; (2) the requirements of the standard were not met; (3) employees were exposed to, or had access to, the violative condition; [and] (4) the employer knew or, through the exercise of reasonable diligence, could have known of the violative condition."

SuperValu, Inc., 158 Wn.2d at 433 (alteration in original) (quoting Wash. Cedar & Supply Co. v. Dep't of Labor & Indus., 119 Wn. App. 906, 914, 83 P.3d 1012 (2004)). "To establish employee access, the Department must show by '*reasonable predictability* that, in the course of [the workers'] duties, employees will be, are, or have been in the zone of danger.'" Mid Mountain Contractors, Inc. v. Dep't of Labor & Indus., 136 Wn. App. 1, 5, 146 P.3d 1212 (2006) (alteration in original) (quoting Adkins v. Alum. Co. of Am., 110 Wn.2d 128, 147, 750 P.2d 1257 (1988)); accord Shimmick Constr. Co. v. Dep't of Labor & Indus., 12 Wn. App. 2d 770, 785, 460 P.3d 192 (2020).

WISHA's rules on excavations apply to "[a]ny person-made cut, cavity, trench, or depression in the earth's surface, formed by earth removal." WAC 296-155-650(2). WAC 296-155-657(1)(a) states that employers

> must protect each employee in an excavation from cave-ins by an adequate protective system . . . except when:
> (i) Excavations are made entirely in stable rock; or
> (ii) Excavations are less than 4 feet (1.22m) in depth and examination of the ground by a competent person provides no indication of a potential cave-in.

At issue here is whether the Department met its burden to demonstrate that the trench was four feet or greater in depth and therefore required cave-in protection.

Construing the evidence in the light most favorable to the Department, the evidence presented to the Board was sufficient to demonstrate that the trench was four feet or greater in depth. Among the exhibits admitted by the Industrial Appeals Judge are three photographs depicting Andemariam's measurement of the trench at the precise spot where Grubenhoff was standing. At the hearing before the Board, Andemariam reviewed these photographs and testified that "I believe if you were to focus in on the tape measure, you would see that it's approximately 5 feet in depth." Andemariam also testified that he independently recalled that the trench "was greater than 4 feet and slightly deeper than 5."

InfraSource contends that these photographs, and Andemariam's corresponding testimony, were "fatally flawed" because the angle of the photographs does not make it sufficiently clear where the top of the trench was with respect to the tape measure. InfraSource did not challenge the admissibility of the photographs, nor does it do so on appeal. As such, its argument is best

6

suited to the trier of fact, not to an appellate court.  Once a photograph has been admitted, the opposing party "may, of course, attempt to show its flaws, inaccuracies, or alteration." 5C KARL B. TEGLAND, WASHINGTON PRACTICE: EVIDENCE LAW AND PRACTICE § 901.21, at 315 (6th ed. 2016).  Ultimately, however, it is for the finder of fact to determine what a photograph depicts.  See Hansel v. Ford Motor Co., 3 Wn. App. 151, 160, 473 P.2d 219 (1970) (whether photograph depicted a mechanical defect was an issue for the jury).

Furthermore, the Board heard testimony from two InfraSource employees who also indicated that the trench was four feet or greater in depth.  Benjamin Grubenhoff, the worker who had been standing in the trench, recognized the photograph depicting him in the trench as "[t]he spot that the ditch was too deep." Grubenhoff also testified that after Andemariam's inspection, he and DeGraaf measured the trench and found that "[s]ome areas of the job site were unsafe" because "[t]he trench was more than 4 feet" deep.  Additionally, DeGraaf testified that he and field safety coordinator Jeremy Ophus took independent measurements in order to determine the size of shoring panels needed.  Those measurements also indicated that the trench was over four feet deep.[5]  The Board found Grubenhoff's and DeGraaf's testimony especially compelling and we will not disturb that determination.

---

[5] "Q. . . . Mr. De Graaf, would you agree with me that one of the measurements you took of this trench with Mr. Ophus indicated that the trench was over 4 feet in depth?
A.   Yes."
"Q. Did you previously testify in this case that on the left side of the shoring jack the trench was not over 4 feet in depth when you and Mr. Ophus measured it, on the right side of the shoring jack it was over 4 feet in depth?
A.   Yes, ma'am."

InfraSource's argument to the contrary is rife with attacks on the evidence presented to the Board as "unconvincing" (Br. of Resp't at 17), "unreliable" (Br. of Resp't at 21), "contradicted by other evidence" (Br. of Resp't at 22), and "not persuasive" (Br. of Resp't at 24).[6]  Essentially, InfraSource asks us to reconsider the weight of the evidence presented to the Board.  We decline to do so.

Substantial evidence supports the Board's findings that the existing trench located at 5825 83rd Avenue, Marysville, Washington was greater than four feet in depth and that InfraSource failed to have any cave-in protection in place.  The Board's findings support its determination that InfraSource committed repeat serious violations of WAC 296-155-657(1)(a) and 296-155-655(11)(b).  The Superior Court erred when it overturned the decision of the Board.

---

[6] InfraSource also asserts that there was no showing that its employees had access to another part of the trench that was indisputably hazardous, as none of its employees were present in that area.  We disagree.

As an initial matter, the Board found that the area where Grubenhoff was *actually* present was greater than four feet deep. We hold today that substantial evidence supports that finding.

Even if we had not so held, there is substantial evidence to support a finding that InfraSource employees had access to the portion of the trench that it agrees was four feet or greater in depth.  Contrary to InfraSource's argument, the proper standard is whether the employees had access to the hazard, not whether they were actually present in the hazardous area.  Mid Mountain Contractors, 136 Wn. App. at 6.  Andemariam testified that InfraSource was "fitting pipes all along that street" and that Grubenhoff informed him that after InfraSource fit the pipe, Grubenhoff "goes in [the trench] to make sure that the pipe is not banging against the wall."  DeGraaf also testified that there were some connections that needed to be made inside the trench.  The photographs taken of the indisputably hazardous area depict InfraSource's yellow piping in the trench.  From this evidence, a reasonable fact finder could infer that InfraSource's employees had access to an area of the trench four feet or greater in depth.

Reversed.

_Dwyer, J._

WE CONCUR:

_Birk, J._          _Mann, J._