Timothy R. LINDSEY, Appellant,

v.

E & E AUTOMOTIVE & TIRE
SERVICE, INC., and James
S. Egbert, Appellees.

No. S–13609.

Supreme Court of Alaska.

Oct. 1, 2010.

Rehearing Denied Dec. 1, 2010.

Phillip Weidner and Michael Cohn, Weidner & Associates, APC, Anchorage, for Appellant.

Timothy M. Stone and Alex Vasauskas, Holmes, Weddle & Barcott, P.C., Anchorage, for Appellees.

Before: CARPENETI, Chief Justice, FABE, WINFREE, CHRISTEN, and STOWERS, Justices.

*OPINION*

FABE, Justice.

## I. INTRODUCTION

In March 2005 Timothy Lindsey was severely injured when his employer's unattended truck rolled backwards and struck him. An inspection revealed that the cause of the accident was a non-functioning parking brake. Lindsey sued E & E Automotive & Tire Service Inc., the repair shop that had recently serviced the truck, for negligence. E & E had been asked to repair the parking brake but was unable to do so. E & E informed Lindsey's employer that it had not repaired the parking brake and that the parking brake still did not work. The superior court granted summary judgment in E & E's favor, concluding that E & E had fulfilled its duty to warn Lindsey's employer that the requested repair had not been made and that a defect still existed with the parking brake. Lindsey appeals.

█ In general, a mechanic who undertakes to inspect or repair a vehicle must exercise reasonable care and will be held liable for harm resulting from the failure to exercise such care. Three more specific duties to exercise reasonable care are implicated in this case: the duty (1) not to increase the risk of harm when repairing a vehicle; (2) not to cause another to rely on a vehicle having been rendered safe when it has not; and (3) to warn a vehicle owner of any dangerous unrepaired conditions of which the mechanic is or should be aware. Because E & E fulfilled these duties when, after making no adjustments to the parking brake, it informed Lindsey's employer that it had not fixed the parking brake and that the parking brake still did not work, we affirm the superior court's grant of summary judgment in favor of E & E and its owner, James Egbert.

## II. FACTS AND PROCEEDINGS

### A. Facts

Wesgro Paint & Drywall Supply, Inc. owned a 1996 Ford F–700 truck. Hal Docherty, the manager at Wesgro responsible for maintaining the company vehicles, had the truck towed to E & E Automotive on February 8, 2005 in a "no start" condition for repairs to its starting mechanism and brakes.[1]

Timothy Kramp, a mechanic at E & E, was responsible for repairing the truck. Kramp did not have any experience working with large trucks and testified that his contact with the truck involved in this lawsuit was "probably the first time [he had] worked on a larger vehicle." Kramp did not have knowledge about the parking brake system on the truck and stated that he was "completely unfamiliar with these parts." He did not attempt to learn about the parking brake system or to acquire a service manual. E & E had worked on large trucks in the past, but the truck involved in this lawsuit was the largest truck that E & E had serviced while Kramp was employed there.

Kramp briefly examined the parking brake system and noticed that the hydraulic valve

---

1. Docherty did not specifically recall whether the truck was sent in for repairs to the front brakes, the parking brake, or both.

at the front of the truck that attached to the parking brake at the rear of the truck was visibly leaking fluid. He attempted unsuccessfully to find a replacement hydraulic valve. Because he could not locate a replacement valve, Kramp performed no further diagnostic work on the parking brake and told Docherty that the truck should be taken to a hydraulic shop to fabricate the part and complete repairs. Kramp testified that replacing the hydraulic valve was the limit of E & E's capability with regard to repairing the truck's parking brake and that E & E generally did not have the capability to work on the rear of the truck where the parking brake was located. While the truck was at E & E, Kramp and another mechanic performed repairs on other parts of the truck that were more similar to those found on small vehicles, including the front brakes and the lock cylinder on the steering column.

Kramp maintains that prior to releasing the truck, he told Wesgro employees that E & E did not repair the parking brake and that the parking brake did not work. Kramp stated in an affidavit that he told Wesgro employees both over the phone and when the truck was picked up that the parking brake would not operate without repair and that the truck was not safe and should not be used until the parking brake was repaired. And in a sworn statement provided to the Alaska Division of Occupational Safety and Health several days after the accident, Docherty confirmed that "[t]he shop [E & E] told us that they could not repair the emergency brake and sent the truck back to us unrepaired." At his deposition, Docherty had difficulty recalling who told him this, but he did not deny receiving this information before the accident. He further stated in his sworn statement that "[e]veryone here [at Wesgro] knew that the emergency/parking brake did not work" after the return of the truck.

On March 14, 2005, Docherty sent Matt Flasch and Justin Dillon, employees at Wesgro, to pick up the truck from E & E. The truck had been out of service for over a

month and was needed for deliveries. E & E charged Wesgro $2,516.58 (of which about $600 was for labor) for the repairs it performed on the front brakes, starter, and lock cylinder and provided a labor warranty for 90 days or 4,000 miles. There was no charge associated with the parking brake, although the invoice noted: "needs ... valve for parking brake, unable to locate parts—try hydraulics shop."

Flasch and Dillon stated in affidavits that Docherty was told by an employee at E & E that the parking brake did not work before they were sent to pick up the truck. Flasch also stated that an employee at E & E told him that E & E had been unable to repair the parking brake and that the parking brake did not work when he picked up the truck, information he relayed to Docherty. This recollection is consistent with the sworn statement Flasch signed days after the accident. Another employee at Wesgro, Carl Odman, stated in his sworn statement that the employees at Wesgro "all knew that the emergency brake on the white truck was not working."

After being picked up from E & E, the truck was put back into service without a functioning parking brake.[2] Two days later, on March 16, 2005, the parked truck rolled backwards at Wesgro's facility, striking Timothy Lindsey, pinning him against the front of another truck, and then rolling over him. Lindsey sustained severe injuries from the accident, primarily to his right leg. The driver of the truck had not used wheel chocks—wedges of sturdy material placed behind a vehicle's wheels to prevent movement—prior to the accident.

A month after the accident, Lindsey's attorney, together with his expert witness Carl Wilbur, conducted a non-destructive assessment of the truck at Wesgro's facility. The expert concluded that the parking brake was inoperable because "there were mechanical adjustments made to the release bolt/release nut on the parking brake chamber assembly, causing this to mechanically 'cage' the internal spring" that ordinarily applies the park-

2. Although the president of Wesgro testified that there was a Wesgro policy to take vehicles out of service when their parking brake was not opera- tional, this policy was apparently not communicated to or enforced by Docherty.

ing brake. A complete "tear-down" was completed by D & D Heavy Equipment Repair and Service the following month. In a letter to the Alaska Division of Occupational Safety and Health, D & D reported that the parking brake failed because "the mechanical mechanism (2 release bolts on the emergency brake pods ...) had been manually overridden," consistent with Wilbur's findings.

The parking brake mechanism on the truck, referred to by D & D as a "backup type failsafe system," works as follows: a spring in the parking brake chamber exerts pressure on a brake wedge that fully applies the parking brake. Unless the spring is compressed, the brake is applied and the vehicle cannot move. A hydraulic system activated from the cab of the truck exerts pressure to compress the spring and disengage the parking brake so that the truck can move. When the hydraulic system is broken, the truck will not operate because the parking brake will remain fully applied. It is also possible to mechanically compress (or "cage") the spring by turning several bolts on the parking brake chamber, which will disengage the parking brake and render it inoperable. Doing so allows a mechanic to adjust and repair the parking brake when servicing the vehicle; it is not intended to permanently disable the parking brake so that the vehicle can operate with a broken hydraulic system.

Lindsey does not allege in his complaint that E & E caged the spring, a point his counsel confirmed at oral argument before the superior court. Nor is there any support in the record for such an allegation. Kramp testified that he had no understanding of the parking brake system or the spring mechanism prior to this lawsuit and that he did not even inspect the parking brake system at the rear of the truck. Docherty had no idea when the spring was caged.

### B. Proceedings

In February 2007 Lindsey sued E & E, James Egbert (the president and owner of E & E at the time of the accident), Wesley Groves (the president of Wesgro), and others for negligence.[3] E & E and Egbert filed a motion for summary judgment in October 2007.[4] Lindsey responded with a Rule 56(f) motion requesting a 120–day continuance to permit further discovery. E & E and Egbert did not oppose a continuance of 60 days, and the parties subsequently stipulated to a number of additional extensions. Briefing resumed in April 2008, and the court heard oral argument in July.

The superior court issued an order in August 2008, granting E & E's motion in part and granting summary judgment in Egbert's favor, dismissing him from the lawsuit. The court agreed with E & E's articulation of the applicable duty of care—to advise the owner that a repair has not been made or that a defect still exists unless the owner is otherwise aware of the defect—but believed there were disputed issues as to what information was relayed about the condition of the parking brake that precluded the entry of summary judgment. It held that Egbert was entitled to summary judgment because Lindsey had offered no evidence that Egbert worked on the truck or was otherwise personally involved in committing any alleged tort.

E & E moved for summary judgment again in January 2009 supported by several additional affidavits by Wesgro employees. The superior court heard oral argument in June 2009 and granted E & E's motion in July. Applying the duty of care articulated in its previous opinion, the court found "no genuine issue of material fact as to whether E & E informed Wesgro that the truck was being returned to them with an unrepaired emergency brake." Lindsey filed a motion to reconsider, which the court denied. Lindsey appeals the superior court's grant of summary judgment in favor of E & E and Egbert.[5]

---

**3.** Having received workers' compensation benefits from Wesgro, his employer, following the accident, Lindsey was barred from suing Wesgro by the exclusive remedy provision of the Alaska Workers' Compensation Act. *See* AS 23.30.055.

**4.** The motion was titled a motion to dismiss but was in fact a motion for summary judgment made pursuant to Alaska Civil Rule 56.

**5.** In his amended statement of points on appeal, Lindsey also challenges the superior court's

## III. STANDARD OF REVIEW

 We review de novo a grant of summary judgment and will uphold summary judgment if the record presents no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.[6] The initial burden is on the moving party to prove, through admissible evidence, that there are no genuine factual disputes and that it is entitled to judgment as a matter of law.[7] The non-moving party is given the benefit of all reasonable inferences.[8]

## IV. DISCUSSION

### A. Liability Of E & E

 To make out a prima facie case of negligence, Lindsey "needed to present evidence on each of the following elements: duty, breach of that duty, proximate cause and damages."[9] "Whether a party has a duty of care and, if so, the nature and scope of that duty are questions of law...."[10] Whether a defendant breached its duty of care is typically a factual question for the jury that is not susceptible to resolution on a motion for summary judgment.[11]

Lindsey argues that E & E should be held liable for his injuries because the accident was caused by E & E's breach of its duty as a professional repairshop. According to Lindsey, E & E breached its duty by: (1) failing to inspect the parking brake system and locate the caged spring in the parking brake chamber after having possession of the truck for five weeks; (2) failing to adjust the release bolts so as to uncage the spring and disable the vehicle; (3) undertaking to repair the truck parking brake without adequate training and experience; (4) failing to reveal its lack of experience to Wesgro; and (5) failing to acquire knowledge by reviewing a service manual.[12] E & E largely does not dispute the facts and instead maintains that they are insufficient as a matter of law to support a claim of negligence against E & E.

 One who undertakes to inspect or repair a vehicle owes a duty to act with the amount of care that a reasonably prudent person would use under similar circumstances and will be liable for harm caused by its failure to exercise such care.[13] Three more specific theories of negligence are implicated in this case, two of which are set forth in Restatement (Second) of Torts § 323: the breach of a mechanic's duty to exercise reasonable care can give rise to liability for harm "if (a) [the mechanic's] failure to exercise such care increases the risk of such harm, or (b) the harm is suffered

grant of attorney's fees. Because Lindsey did not brief the point, we consider this challenge to be waived. *See, e.g., Danielle A. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.,* 215 P.3d 349, 356 n. 46 (Alaska 2009) (citing *Washington Ins. Guar. Ass'n v. Ramsey,* 922 P.2d 237, 247 n. 29 (Alaska 1996)); *In re Estate of Fields,* 219 P.3d 995, 1013 (Alaska 2009) (citing *Wasserman v. Bartholomew,* 38 P.3d 1162, 1171 (Alaska 2002)).

6. *Progressive Cas. Ins. Co. v. Skin,* 211 P.3d 1093, 1098 (Alaska 2009).

7. *Egner v. Talbot's, Inc.,* 214 P.3d 272, 278 (Alaska 2009).

8. *Progressive Cas. Ins. Co.,* 211 P.3d at 1098.

9. *Wickwire v. Arctic Circle Air Servs.,* 722 P.2d 930, 932 (Alaska 1986).

10. *Bryson v. Banner Health Sys.,* 89 P.3d 800, 803 n. 4 (Alaska 2004).

11. *See Swenson Trucking & Excavating, Inc. v. Truckweld Equip. Co.,* 604 P.2d 1113, 1118–19

(Alaska 1980); *Webb v. City & Borough of Sitka,* 561 P.2d 731, 735 (Alaska 1977).

12. In making his argument, Lindsey relies on the affidavit of his expert witness, Carl Wilbur, who opines on the duty of care of a truck mechanic in these circumstances.

13. *Swenson Trucking & Excavating, Inc.,* 604 P.2d at 1117–18; *see also* 14 BLASHFIELD AUTOMOBILE LAW AND PRACTICE § 476.32 (rev.3d ed. 2005) ("A contract ... for repairs with a garage keeper imposes upon him the duty to use ordinary care ... to do the work required with ordinary skill and judgment."); 16 AM.JUR.2D *Proof of Facts* 207, § 1 (1978) ("The ... relationship between the repairer of a motor vehicle and the person ordering the repairs requires that the repairer exercise ordinary skill and care in repairing the vehicle."). The duty owed the owner of the vehicle by a mechanic is based on the parties' bailor-bailee relationship, while a duty owed to another plaintiff depends on whether the defendant would have foreseen that the failure to exercise ordinary care in making repairs would pose an unreasonable risk of injury to the plaintiff. 11 CAUSES OF ACTION 487, § 3 (1986).

because of the other's reliance upon the undertaking." [14] A mechanic may also be held liable for harm caused by his failure to exercise reasonable care to warn a vehicle owner of any dangerous condition of which the mechanic is or should be aware.[15]

■ First, a mechanic will be liable where he negligently creates a dangerous condition or increases the danger. In the context of brakes, for example, a mechanic would be liable for improperly installing a brake drum,[16] improperly reinstalling a brake adjustor assembly,[17] or incorrectly assembling the parts of a brake mechanism.[18] As discussed above, Lindsey does not allege and has presented no evidence that E & E caged the spring in the parking brake chamber or made any repairs or modifications to the parking brake system.

■ At oral argument before us, Lindsey also contended that E & E could have increased the risk of harm by rendering the truck operable after it was towed to E & E's facility in a "no start" condition. But Lindsey failed to make this argument before the superior court or in his briefing on appeal.[19] And even if Lindsey had preserved this argument, the problem with the starting mechanism has no relation to the non-functioning parking brake. Thus, E & E's repair of the starting mechanism could not render it liable for all other defects in the truck on the theory that it increased the risk of harm. Here, it is uncertain when the parking brake became non-functional. Lindsey does not allege that E & E's actions made the parking brake non-functional, and because Lindsey does not allege that E & E itself created a dangerous condition or increased the risk of harm to Lindsey, E & E may not be held liable under this theory of negligence.

■ Second, a mechanic will be liable if the mechanic negligently returns a vehicle as repaired or inspected, giving the vehicle a "deceptive appearance of safety" on which the owner relies, when in fact the vehicle is not in a safe condition.[20] Relying on this theory of negligence, we reversed a grant of summary judgment in *Swenson Trucking & Excavating, Inc. v. Truckweld Equipment Co.*[21] In that case, a company inspected a ram assembly and installed it on a truck but failed to discover a defective weld in the assembly.[22] The company returned the truck to the owner as repaired and, about five weeks later, the assembly collapsed, destroying the truck.[23] We held that the question whether the repair company exercised reasonable care in inspecting and installing the ram assembly was one of fact for the jury to decide.[24]

14. Restatement (Second) of Torts § 323 (1965).

15. *See* Restatement (Second) of Torts § 388 (1965).

16. *See Morgan v. Mixon Motor Co.*, 10 Ill.App.2d 323, 137 N.E.2d 504 (1956).

17. *See Metrailer v. F & G Merch., Inc.*, 230 So.2d 395 (La.App.1969).

18. *See Hansel v. Ford Motor Co.*, 3 Wash.App. 151, 473 P.2d 219 (1970).

19. *See Kellis v. Crites*, 20 P.3d 1112, 1114–15 (Alaska 2001) (holding that argument not raised before superior court or in appellant's opening brief is waived).

20. Restatement (Second) of Torts § 403 cmt. b (1965); *see also Levine v. Sears Roebuck & Co.*, 200 F.Supp.2d 180, 187 (E.D.N.Y.2002) ("Underlying a negligent repair claim is the concern that a repairer will hand over an unsafe product that appears fixed, but which is actually still in an unsafe condition."); *Jewell v. Dell*, 284 S.W.2d 92, 96 (Ky.1955) ("Actionable negligence of a repairman or serviceman from failure of the mechanism of a motor car upon which he has worked rests in part, at least, upon his assurance—more often implied than expressed—that the machine was safe for operation when in fact it was not."); *Block v. Fitts*, 274 So.2d 811, 814 (La.App.1973) ("If [a repairman] represents to the owner that he has repaired the defect and that the car is safe to drive, and he allows the owner to take and operate the car under that erroneous impression, then we think the repairman's negligence in failing to properly repair the car, coupled with his failure to warn the owner, may be a proximate cause of an accident attributable to that defect.").

21. 604 P.2d 1113 (Alaska 1980).

22. *Id.* at 1115.

23. *Id.*

24. *Id.* at 1118–19.

But unlike in *Swenson,* E & E did not represent to Wesgro that it had completed repairs on the parking brake and was returning the truck in a safe condition. To the contrary, it is undisputed that Kramp told multiple employees at Wesgro that he had not repaired the parking brake.[25] In doing so, E & E fulfilled its duty to Wesgro to exercise reasonable care not to induce reliance on the safety of the unrepaired parking brake. The rationale for holding a mechanic liable under this theory of negligence does not apply in this case—E & E did not give the truck a "deceptive appearance of safety." Because E & E made no explicit or implicit representation, on which Wesgro may have relied, that the parking brake was repaired, E & E may not be held liable under this theory of negligence as a matter of law.[26]

In effect, Lindsey seeks to impose an absolute obligation on E & E to complete repairs on the parking brake or face liability: "The duty of a repairman is to repair. If he is unqualified to undertake the repairs he should say so up front...." But he has provided no support for imposing such an obligation. A mechanic might not be able to complete a repair for a number of reasons: lack of experience, lack of resources, lack of time, or because the owner of the vehicle decides against it. As Kramp testified in this case, a mechanic may undertake to repair a vehicle only to find that the problem is beyond his capability. It would not be appropriate, indeed it would be dangerous, to require a mechanic in such an instance to attempt to complete repairs to avoid liability. Rather, a mechanic who does not complete a vehicle repair fulfills his duty not to negligently induce reliance on the safety of the vehicle by clearly informing the vehicle owner that the vehicle was not repaired.

Even if a mechanic makes clear to the vehicle owner that the vehicle remains unrepaired, the mechanic may still be held liable under the third specific theory of negligence implicated by this case: a mechanic returning an unrepaired vehicle is liable for harm caused by the use of the vehicle if the mechanic fails to exercise reasonable care to warn the owner of any dangerous condition of which he knows or has reason to know unless he has reason to believe that the owner is aware of the dangerous condition.[27]

25. When it denied E & E's first motion for summary judgment, the superior court found there to be "material facts in dispute ... regarding what exact information was relayed about the condition of the brakes, and significantly whether Wesgro was reasonably advised or otherwise aware that the parking brake was unrepaired and remained defective." The superior court had no such doubts after reviewing the additional evidence submitted in connection with E & E's second motion for summary judgment, determining there to be "no genuine issue of material fact as to whether E & E informed Wesgro that the truck was being returned to them with an unrepaired emergency brake." We agree.

26. *See Levine v. Sears Roebuck & Co.,* 200 F.Supp.2d 180, 189 (E.D.N.Y.2002) ("Because there is no evidence of any misrepresentation by the repairman, or that Mrs. Levine was deceived by an appearance of safety, plaintiff's negligent repair claim must be rejected as a matter of law."); *Jewell v. Dell,* 284 S.W.2d 92, 96 (Ky. 1955) (holding that mechanic was entitled to directed verdict where "the truck driver received no ... assurance [of safety of brakes] but on the contrary was fully apprised of the fact that the brakes had been only adjusted or partially repaired, and he accepted the truck in that condition").

27. RESTATEMENT (SECOND) OF TORTS § 388 (1965); *see also Levine,* 200 F.Supp.2d at 189 ("A repairer not only has a duty to use reasonable care to inspect for defects, but also to warn intended users of any potential dangers of which he knows or should know, and which are not obvious to the intended users." (internal quotation marks, punctuation, and emphasis omitted)); *Hunt v. Ford Motor Co.,* 341 So.2d 614, 619–20 (La.App. 1977) (concluding that a supplier of a dangerous vehicle that has knowledge of defect is liable where it "failed to make reasonable efforts to ascertain exact nature of defect and to correct it, or to warn the purchaser of danger"); *Delbrel v. Doenges Bros. Ford, Inc.,* 913 P.2d 1318, 1322 (Okla.1996) ("[O]ne who is paid to repair a car owes a duty of care to both the owner of the car and to the general public to assure that the repair is properly performed or the owner is warned of its dangerous condition, where the dangerous condition is discoverable in the exercise of ordinary care."); *Gall v. McDonald Indus.,* 84 Wash.App. 194, 926 P.2d 934, 939 (1996) ("[T]he supplier [of dangerous chattel] may have a duty to inspect and repair the chattel so that a reasonable person would think it safe; to warn of the chattel's condition in such fashion that a reasonable person would expect the recipient to correct or avoid any unsafe condition; or to engage in some combination of these approaches.").

The liability of a supplier of a dangerous chattel finds some support in our case law. In *Wickwire v. Arctic Circle Air Services,* for example, we assumed that a company that leased a plane from the owner could be liable for negligence for returning the plane in a defective condition if the company knew or reasonably should have discovered the defect in the plane.[28] But because the owner presented no evidence that the company should have known about the defect, or even that the defect was present when the company had possession of the plane, we affirmed the directed verdict in the company's favor.[29]

Lindsey does not dispute that Kramp told Docherty and the Wesgro employees who picked up the truck that the parking brake was not working. But Lindsey contends that the adequacy of this warning is a genuine issue of fact. Although breach of a duty of care is typically a factual question for the jury, in this instance no reasonable juror could conclude that E & E failed to fulfill its duty to exercise reasonable care to warn Wesgro of the dangerous condition of the truck.

■■■ Lindsey first argues that the warning was inadequate because E & E did not inform Wesgro of the caged spring in the parking brake chamber. But there was no evidence that E & E knew about the spring mechanism. In fact, it is undisputed that Kramp had no understanding of and did not inspect the parking brake system and thus did not discover the caged spring. In this circumstance, it was adequate for E & E to inform Wesgro that the parking brake was not functioning without explaining the specific cause.

■■■ Lindsey next argues that the warning was inadequate because, according *to* Docherty, Kramp did not tell him that the truck was unsafe and should not be operated until the parking brake was repaired. As the president of Wesgro acknowledged, Docherty should not have required the admonition of a repair shop to recognize that it is dangerous to operate a large commercial vehicle without a functioning parking brake.[30] Indeed, it was the policy of Wesgro not to operate its trucks without a functioning parking brake. It was reasonable for Kramp to believe that by informing Docherty that the parking brake did not function, Docherty would realize the dangerous condition of the truck; no more explicit warning was necessary.[31] Docherty's failure to follow his employer's policy and take the truck out of operation does not render the warning inadequate.[32]

■■■ Finally, Lindsey contended at oral argument that E & E's warning was insufficient because it was not in writing on the invoice. But Lindsey has offered no legal support for requiring a warning to be in writing in all cases, and the facts of this case do not demand such a requirement. The purpose of a warning is to ensure that the vehicle will not cause harm to persons or property; this purpose was effectuated when Kramp provided a clear oral warning. E & E's warning to Wesgro that the parking brake on the truck was not functioning fulfilled its duty of care as a matter of law and absolved it from liability under this theory of negligence.[33]

**28.** 722 P.2d 930, 934 (Alaska 1986).

**29.** *Id.* at 934–35.

**30.** The president of E & E at the time of the accident similarly testified that "anybody in their right mind should know that [a truck without a functioning parking brake] was a dangerous vehicle."

**31.** *See* Restatement (Second) of Torts § 388 (1965) (explaining that there is no liability where a supplier of chattel known to be dangerous "has ... reason to believe that those for whose use the chattel is supplied will realize its dangerous condition").

**32.** *See id.* § 388 cmt. g ("[T]he supplier of a chattel who has given such information [as is necessary to make the use of the chattel safe] is entitled to assume that it will not be used for purposes for which the information given by him shows it to be unfit and, therefore, is relieved of liability for harm done by its misuse to those in the vicinity of its probable use.").

**33.** *See Jewell v. Dell,* 284 S.W.2d 92 (Ky.1955) (affirming directed verdict for mechanic where there was "uncontradicted evidence that the truck driver ... [knew] that the brakes were not in good order").

Because E & E informed Wesgro that it did not repair the parking brake and that the parking brake still did not function, E & E did not breach its duty as a mechanic as a matter of law and is entitled to summary judgment in its favor.

## B. Liability Of James Egbert

Lindsey also seeks to hold Egbert liable for his personal conduct as the owner of E & E.[34] Lindsey argues that Egbert committed negligence by: (1) agreeing to undertake repairs of the truck when E & E did not have adequate training and experience; (2) assigning Kramp to work on the truck given his lack of qualifications; (3) failing to obtain a service manual; (4) failing to detect and remedy the caged spring in the parking brake chamber and releasing the unrepaired truck to Wesgro; (5) failing to refer the truck to a qualified truck shop; and (6) failing to adequately train and supervise Kramp.

Egbert sought summary judgment, supported by his own affidavit, on the ground that he performed no work on the truck while it was at E & E, did not supervise the work on the truck, and did not participate in the return of the truck to E & E. At his deposition, Egbert testified that he authorized the truck to be released to Wesgro knowing that the emergency brake was not functioning.[35] In addition, Egbert picked up a replacement hydraulic valve for the truck and delivered it to the garage, although it was not the right fit and was not used. Egbert did not give his mechanics any instructions concerning their work on the parking brake or any other part of the truck, and he did not perform any work on the truck himself.

Lindsey's negligence claim against Egbert largely mirrors his claim against E & E, but he presents little evidence of Egbert's personal involvement for which Egbert might be held liable. Lindsey fails to rebut Egbert's statements in his affidavit that he did not personally perform any work on the truck and that he did not direct how work on the truck was to be performed. The extent of Egbert's personal involvement appears to be picking up an incorrect replacement part and instructing an employee that Wesgro was entitled to have their truck back when they asked for it. It is questionable whether based on this conduct, Egbert owed a personal duty of care to Wesgro or Lindsey.[36] But even if he did, that duty was not breached for the reasons discussed above.[37]

## V. CONCLUSION

For the foregoing reasons, we AFFIRM the superior court's ruling granting summary judgment in E & E and Egbert's favor.

34. Lindsey does not seek to pierce the corporate veil and hold Egbert, the president and sole shareholder of E & E, liable for torts allegedly committed by Egbert's company. He seeks to hold Egbert liable for Egbert's own alleged negligence. *See Casciola v. F.S. Air Serv., Inc.*, 120 P.3d 1059, 1063 n. 11 (Alaska 2005) ("The corporate form does not shield corporate officers or employees who commit torts on behalf of their employer from personal liability.").

35. According to Egbert, an Alaskan mechanic cannot by law refuse to release a vehicle to an owner on the grounds that it is dangerous. We need not examine that issue to resolve this appeal.

36. *See D.S.W. v. Fairbanks N. Star Borough Sch. Dist.*, 628 P.2d 554, 555 (Alaska 1981) (listing factors to be considered in determining whether an actionable duty of care existed, including "the closeness of the connection between the defendant's conduct and the injury suffered [and] the moral blame attached to the defendant's conduct").

37. Some of the alleged grounds for Lindsey's negligence claim against Egbert are distinct from the grounds for his claim against E & E: Egbert's assignment of Kramp to work on the truck and his negligent supervision and training of Kramp. But Lindsey fails to present evidence to support these allegations. There is no evidence in the record that Egbert personally assigned Kramp to work on the truck. Nor is there evidence concerning what training and supervision Egbert provided to Kramp or how such training and supervision was negligent. Perhaps more importantly, Lindsey's claims of negligent assignment, supervision, and training are all dependent on Kramp's negligence. Because we conclude that there is no evidentiary support for the claim that Kramp breached his duty of care, Egbert's alleged conduct cannot support a claim of negligence either.